# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# FORT WAYNE DIVISION

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | CAUSE NO.: 1:10-CR-16-TLS |
| | ) | |
| PRIMITIVO AVILES FLORES | ) | |

## OPINION AND ORDER

The Defendant, Primitivo Aviles Flores, has pleaded guilty to Count 3 of the Indictment [ECF No. 11] charging him with violating 21 U.S.C. § 841(a)(1) for possessing with the intent to distribute a Schedule II controlled substance. This matter is before the Court on the Defendant's objections to multiple recommendations in the Presentence Investigation Report (PSR or Report) prepared by the United States Probation Office. The Defendant raises the following issues for the Court's determination: (1) he objects to the enhancement for playing a supervisory role pursuant to § 3B1.1(c); (2) he asks the Court to apply the safety valve under § 5C1.2; and (3) he objects to the obstruction of justice enhancement under § 3C1.1.

## PROCEDURAL BACKGROUND

On March 24, 2010, the Defendant was charged in an Indictment [ECF No. 11], with three counts of possessing with the intent to distribute methamphetamine in violation of 21 U.S.C. § 841(a)(1). On September 22, the Government and the Defendant filed a Plea Agreement [ECF No. 30] in which the Defendant agreed to plead guilty to Count 3 in exchange for the dismissal of Counts 1 and 2. On November 8, Magistrate Judge Roger B. Cosby conducted a change of plea hearing at which the Defendant changed his plea to guilty on Count 3. On November 8, Judge Cosbey issued his Findings and Recommendation [ECF No. 36], recommending that the Court

accept the Defendant's plea of guilty and adjudge him guilty of Count 3. On November 23, the Court adopted the Findings and Recommendation and adjudged the Defendant guilty of Count 3.

On January 18, 2011, the United States Probation Office prepared a PSR. The Report was revised on February 10. On February 5, the Defendant filed a Sentencing Memorandum and Objections to the Presentence Investigation Report [ECF No. 42]. On April 18, the Court conducted a telephonic status conference at which the Defendant withdrew a number of his initial objections to the PSR. On May 5, the Court held an evidentiary hearing [ECF No. 48] to allow the parties to present arguments and evidence on the sentencing issues now before the Court. On June 26, the Defendant filed a Brief Regarding Sentencing Issues [ECF No. 50]. On July 6, the Government filed its Sentencing Memorandum [ECF No. 52].

**FACTUAL BACKGROUND**

On February 9, 2010, an FBI confidential human source (CHS) consented to a search of his business at which a task force officer recovered methamphetamine that the CHS indicated the Defendant had provided. On February 11, law enforcement officers worked with the CHS to set up a controlled payment for the methamphetamine that he had already obtained and a purchase of additional methamphetamine. The CHS asked the Defendant to provide additional methamphetamine to him on credit, and the Defendant subsequently provided the methamphetamine after going to another location to obtain it.

On February 16, the CHS arranged to pay the Defendant for the methamphetamine he received on credit during their February 11 meeting. The CHS spoke with the Defendant by telephone in setting up the logistics for the meeting. Unlike previous meetings, an individual known to the CHS as "Rueben" was not with the Defendant. When the CHS asked where

"Rueben" was, the Defendant responded that "Oscar" was in Mexico. After the February 16 meeting, a Fort Wayne Police Department officer stopped the vehicle that the Defendant was driving for a traffic infraction. The Defendant provided the officer the same address that the car he was driving was registered to—an address in Portland, Indiana, associated with Oscar Gutierrez Lopez.

On February 26, the CHS relayed to the police that the Defendant told him "Oscar" would be making the next delivery while the Defendant was in Los Angles getting lots of kilos. The CHS called the Defendant and ordered three ounces of methamphetamine for $1050. The call was recorded.

On March 4, the CHS spoke with Lopez[1] by telephone and arranged to meet him in Fort Wayne to purchase the drugs that the CHS had previously ordered from the Defendant. During the March 4 meeting, the CHS discussed with Lopez the CHS's plan to take a transportation job from the Defendant originating at Chicago O'Hare Airport, which would involve the CHS driving drugs from Chicago back to Indiana for the Defendant.

On March 8, the CHS spoke with the Defendant by telephone and agreed to distribute two to three pounds of methamphetamine that the Defendant planned on bringing back from Kansas City, Missouri. On March 9, the CHS spoke to the Defendant. The Defendant indicated he was unable to get a rental car, but that he would drive with his friend in his friend's car to Kansas City, and that the Defendant would then fly back while the friend drove the shipment back to Indiana. On March 10, the CHS and Defendant spoke, and the Defendant updated the CHS that he

---

[1] Although this individual is referenced as both "Rueben" and "Oscar," the Court will refer to this individual as "Lopez." Through the investigation, it was learned that this individual was Oscar Gutierrez Lopez.

3

would be obtaining methamphetamine from the same source in Mexico, but it would be distributed through Atlanta, Georgia, instead of Kansas City. On March 11, the Defendant called the CHS to confirm that the shipment had arrived in Indianapolis, Indiana.

On March 15, the Defendant left a voice mail message for the CHS to let the CHS know that the Defendant would need time to get the drugs from a separate storage location when the CHS was ready to purchase them. On March 16, the CHS spoke by telephone with the Defendant to arrange his purchase of one pound of methamphetamine. The police had the Defendant under surveillance and observed him drive to an apartment in Portland, Indiana, go inside for a brief period of time, and emerge with his pocket seemingly weighted down by an object. The Defendant then drove to a house in Portland, Indiana, he entered that house, later emerged with a second man, and then both men headed in a vehicle towards Fort Wayne. On the way, an Indiana State Police officer stopped the two men, and he identified the driver as Lopez and the Defendant as the passenger. With the assistance of his K-9, the Indiana State Police officer located approximately a pound of methamphetamine in a bag in the back seat of the car.

After advising the individuals of their *Miranda* rights, the police interviewed Lopez and the Defendant. Lopez stated that the Defendant was paying him to bring drugs to a buyer in Fort Wayne, that he was driving because the Defendant did not have a license, that the residence they came from was his previous residence, but that the bank was in the process of repossessing it from him. The Defendant stated that he came to the United States six months ago, lived with Lopez, and wanted to go to Fort Wayne to see his sister. He disavowed any knowledge that there were drugs in the car, stating that the bag was in the car before he got into it. The Defendant also had a SIM card in his sock, a key chain with the name of the town in Georgia from whence the drugs came, and was wearing a T-shirt with a logo that matched the logo on the bag containing

4

the drugs.

The police interviewed the woman who occupied the apartment in Portland, Indiana, where the Defendant picked up the drugs. At first, she denied knowing anything, but on further questioning she admitted that she allowed an individual named "Pretivo" to leave something at her house. The date she gave for when he left a package at her house was the same date as the Defendant's return flight from Atlanta. At the May 5 evidentiary hearing, the Government offered, and the Court admitted, an exhibit that is attached to the PSR. The exhibit is the police report of the interview with the woman from the apartment.

## DISCUSSION

Courts resolve disputed sentencing factors at a sentencing hearing in accordance with Federal Rule of Criminal Procedure 32(i). U.S.S.G. § 6A1.3(b). The Guidelines provide the following instruction:

> When any factor important to the sentencing determination is reasonably in dispute, the parties shall be given an adequate opportunity to present information to the court regarding that factor. In resolving any dispute concerning a factor important to the sentencing determination, the court may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy.

U.S.S.G. § 6A1.3(a). The Seventh Circuit has adopted this guidance as the Government's burden of proof to prove a disputed fact relating to sentencing. *See United States v. Schroeder*, 536 F.3d 746, 753 (7th Cir. 2008) (reiterating the that the Government's burden of proof at sentencing is that a fact has "sufficient indicia of reliability to support its probable accuracy" even if the fact would not be admissible at trial) (quoting *United States v. Artley*, 489 F.3d 813, 821 (7th Cir. 2007)).

5

The statutory minimum sentence for a violation of 21 U.S.C. § 841(a)(1) is 120 months. According to the PSR, the total offense level in this case is 35, and the criminal history category is I. The advisory guideline range corresponding to this offense level and criminal history category is 168 to 210 months of imprisonment. The Defendant objects to the two-level enhancement in Paragraph 66 of the PSR for his alleged supervisory role pursuant to § 3B1.1(c) and the two-level enhancement in Paragraph 68 for his alleged obstruction of justice pursuant to § 3C1.1, and he seeks an application of the safety valve, pursuant to § 5C1.2, which would permit the Court to sentence the Defendant without regard to the 120-month statutory minimum term. Because one of the requirements in order to be eligible for the safety valve is that a defendant not be an organizer, leader, manager, or supervisor of others in the offense, U.S.S.G. § 5C1.2(a)(4), the Court will first address the Defendant's objection to the recommendation pursuant to § 3B1.1(c) that he was an organizer, leader, manager, or supervisor. The Court will then address the Defendant's request for an application of the safety valve and finally the Defendant's objection to the obstruction of justice enhancement.

**A.     Aggravating Role in the Offense, § 3B1.1(c)**

Sentencing Guideline § 3B1.1(c) provides that "[i]f the defendant was an organizer, leader, manager, or supervisor in any criminal activity other than described in (a) or (b), increase by 2 levels." Application Note 4 as to § 3B1.1 states:

> Factors the court should consider include the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.

*See also United States v. Vallar*, 635 F.3d 271, 280–82 (7th Cir. 2011) (discussing the factors identified § 3B1.1, Application Note 4).

The Defendant argues that the Defendant did not supervise the woman from the apartment, drivers transporting drugs, or Lopez. As to the woman, the Defendant argues that the police report attached to the PSR as Exhibit 1 contains a contradictory story about the nature of the woman's involvement in allegedly allowing the Defendant to utilize her apartment as a stash house. The woman admitted that Lopez had dated her sister, and the Defendant argues if anyone had control over the woman it was Lopez, not the Defendant. The Defendant argues that there is no evidence that the Defendant exercised any control over individuals transporting the drugs. As to Lopez, the Defendant argues that Lopez owned the home observed by the police, owned multiple vehicles, was the sole participant in the March 4, 2010, controlled buy, and spent time in Mexico whence the drugs came. The Defendant also argues that when the police stopped the Defendant and Lopez on March 16, 2010, Lopez had $4647 in U.S. currency in his possession while the Defendant only had $837 in US currency in his possession. The Government responds that the Defendant admitted to helping the woman with rent in exchange for her willingness to let him store packages at her apartment, that the Defendant would fly to locations where the drug supply was coming into the country and would not drive back to Indiana with the supply, leaving it with an individual under his control, and that Lopez's actions reflected that of a "flunky" because an individual in charge would not want his name to be easily traceable to a house and multiple vehicles used in drug transactions. The Government also argues that the difference in currency on their persons at the time of the March 16 traffic stop does not negate all of the other evidence that supports the finding that the Defendant played the role of an organizer, leader, manager, or supervisor in committing the offense.

7

The Court finds that the Defendant exercised decision-making authority in arranging the price and coordinating the transaction between the CHS and Lopez on March 4, 2010. Whether or not the Defendant was present, he participated in the commission of the offense at every level, from arranging transactions with the CHS to coordinating the receipt of the drug supply, first from Kansas City and then, when plans changed, from Atlanta.[2] The Defendant attempted to recruit the CHS to transport drugs from the Chicago O'Hare Airport. The Defendant coordinated all of the drug transactions, even if he was not present, and at a minimum he directed Lopez to complete the March 4 transaction in his absence. The parties do not extensively discuss the Defendant's claimed right to a larger share of the fruits of the crime. To the extent there is any evidence, this factor is in the Defendant's favor because Lopez had more cash on his person than did the Defendant at the time of arrest. However, the one fact regarding the amount of cash on their persons at the time of arrest does not undercut all of the other facts indicating that the Defendant played a role of an organizer, leader, manager, or supervisor in the commission of the offense. The Defendant coordinated the receipt of drugs at either the Kansas City entry point or the Atlanta entry point from Mexico, assisted with the woman's rent in order to stash drugs at her apartment, directed Lopez's actions from selling drugs to driving the Defendant around, and attempted to recruit the CHS to transport drugs. All of these factors provide sufficient indicia of reliability to support the probable accuracy that the Defendant was an organizer, leader, manager, or supervisor. Thus, the Court will overrule the Defendant's objection to the two-level enhancement pursuant to § 3B1.1 as set forth in Paragraph 66 of the PSR.

---

[2] The Government also argues that the Defendant committed a drunk driving offense in 2005 in Lawrenceville, Georgia, near Atlanta. This, in addition to the key chain from Georgia on the Defendant's person at the time of the March 16 arrest, corroborate the assertion that the Defendant spent time in Atlanta receiving drug shipments.

**B.     Safety Valve, § 5C1.2**

If a defendant meets the requirements under § 5C1.2 of the Sentencing Guidelines ("the safety valve"), a court sentences the defendant in accordance with the applicable guidelines without regard to the statutory minimum. *See United States v. Corson*, 597 F.3d 804, 813 (7th Cir. 2009) (acknowledging that the safety valve is one of only two ways a district court can impose a sentence below a mandatory minimum). To be eligible for the safety valve, Sentencing Guideline § 5C1.2(a)(4) requires that the defendant not be "an organizer, leader, manager, or supervisor of others in the offense, as determined under the sentencing guidelines . . . ." Because the Court has already found that the Defendant was an organizer, leader, manager, or supervisor for purposes of the § 3B1.1(c) enhancement, the Court also finds that the Defendant fails to meet all of the elements necessary for the application of the safety valve, and the Court will deny his request to apply the safety valve. *See United States v. Doe*, 613 F.3d 681, 690 (7th Cir. 2010) ("Because we find that [the defendant's] sentence was properly enhanced under § 3B1.1 for his aggravating role, he is ineligible for application of the safety-valve provision contained in U.S.S.G. § 5C1.2.").

**C.     Obstruction of Justice, § 3C1.1**

The Defendant's remaining objection is to the application of the two-level enhancement pursuant to Sentencing Guideline § 3C1.1 for obstructing or impeding the administration of justice, as contained in Paragraph 68 of the PSR. The basis for this enhancement is that, prior to the initial appearances of the Defendant and Lopez, the Defendant offered to pay for Lopez's attorney if Lopez would take the blame for the drugs. In support of this claim and Lopez's credibility, the Government argues that all of the other information that Lopez provided has been

corroborated by police investigation. The Defendant argues that Lopez's accusation is an attempt by an associate to shift the blame to the Defendant and away from himself and that Lopez's self-serving statement is not a sufficient evidentiary basis on which to apply a § 3C1.1 enhancement.

> Section 3C1.1 provides:
>
> If (A) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (B) the obstructive conduct related to (i) the defendant's offense of conviction and any relevant conduct; or (ii) a closely related offense, increase the offense level by 2 levels.

The sentencing guidelines provide a non-exhaustive list of examples of the types of conduct to which § 3C1.1 applies. Application Note 4 identifies the following, which are relevant to this case: (A) "threatening, intimidating, or otherwise unlawfully influencing a co-defendant . . . , directly or indirectly, or attempting to do so"; (B) "committing, suborning, or attempting to suborn perjury"; or (D) "destroying or concealing or directing or procuring another person to destroy or conceal evidence that is material to an official investigation or judicial proceeding . . . , or attempting to do so."

> Paragraph 58 of the PSR states:
>
> Investigative documents revealed that prior to the defendant's initial appearance the defendant offered to pay for Oscar Lopez's attorney if he would take the blame for the drugs. As such, two (2) points will be added for Obstruction of Justice pursuant to U.S.S.G. § 3C1.1.

This claim by the Defendant's associate, which the Defendant apparently made prior to his initial appearance is not sufficiently reliable. The Government has not provided any additional evidence for this obstruction of justice enhancement.[3] Consequently, the Court will sustain the Defendant's

---

[3] The evidence presented in support of a § 3C1.1 enhancement is distinguishable from the evidence provided in support of the § 3B1.1(c) enhancement because to the extent the Court relies on any of Lopez's statements in applying the § 3B1.1(c) enhancement, they are corroborated. The evidence

objection to the application of a two-level enhancement pursuant to Sentencing Guideline § 3C1.1 as recommended in Paragraph 68 of the PSR.

## CONCLUSION

For the foregoing reasons, the Court OVERRULES the Defendant's objection to Paragraph 66 of the PSR, DENIES the Defendant's request for an application of the safety valve pursuant to Sentencing Guideline § 5C1.2. The Court SUSTAINS the Defendant's objection to paragraph 68 of the PSR. The Court CONFIRMS the sentencing hearing scheduled for August 18, 2011, at 10:00 a.m.

SO ORDERED on August 1, 2011.

 s/ Theresa L. Springmann
THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT

---

offered in support of a § 3C1.1 enhancement states only that investigative documents revealed an allegation the Defendant made comments to Lopez, which was not corroborated and thus lacks sufficient indicia of reliability to support its probable accuracy.